**Elisa R. ROMERO, Plaintiff,**

v.

**DEPARTMENT STORES NATIONAL BANK et al., Defendants.**

**Case No.: 15-CV-193-CAB-MDD**

United States District Court,
S.D. California.

Signed August 5, 2016

---

Ivan Miguel Lopez Ventura, Ivan M. Lopez Ventura, Esq., Hawthorne, CA, Ronald Wilcox, Ronald Wilcox, Attorney at Law, San Jose, CA, Andre L. Verdun, Crowley Law Group, San Diego, CA, for Plaintiff.

Christine M. La Pinta, Seltzer Caplan McMahon Vitek, San Diego, CA, Julie Lynette Urzi, Macy's Law Department, Bridgeton, MO, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Hon. Cathy Ann Bencivengo, United States District Judge

This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction on the grounds that Plaintiff lacks standing under Article III of the Constitution. The parties have each filed three briefs on the issue, and the Court held oral argument on June 2, 2016. For the reasons set forth below, the motion is granted.

### I. Background

In 2014, Plaintiff failed to make payments on the amount owing on her Macy's credit card. To collect that debt, Defendants, who were the creditors, called Plaintiff on her cellular telephone, which is the only telephone number Plaintiff had provided for her account. Plaintiff contends that Defendants called her over 290 times using an automated telephone dialing system ("ATDS") over the course of six months between July and December 2014. Plaintiff answered only three of these telephone calls: one in July, one in September, and one in December. According to Plaintiff, on each of these occasions she asked Defendants to stop calling her. Defendants did not call Plaintiff again after the last call Plaintiff answered in December 2014. In January 2015, Plaintiff filed this lawsuit, asserting claims for violation of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq. ("RFDCPA"), intrusion upon seclusion, negligent infliction of emotional distress, and violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

According to the complaint, "Defendant's unlawful conduct caused Plaintiff severe and substantial emotional distress, including physical and emotional harm, including but not limited to: anxiety, stress, headaches (requiring ibuprofen, over the counter health aids), back, neck and shoulder pain, sleeping issues (requiring over the counter health aids), anger, embarrassment, humiliation, depression, frustration, shame, lack of concentration, dizziness, weight loss, nervousness and tremors, family and marital problems that required counseling, amongst other injuries and negative emotions." [Doc. No. 1 at ¶ 3.] At her deposition in this matter, Plaintiff testified that as a result of Defendants calling to collect the money she owed, Plaintiff suffered "nervousness, a lot of tension, problems with my husband, headaches, my neck, and they would go down to my back and I would lose my appetite. I lost weight." [Doc. No. 79-2 at 3.]

After the close of discovery, Defendants' moved for summary judgment on the RFDCPA, intrusion upon seclusion, and negligent infliction of emotional distress claims, and the Court granted the motion. Specifically, the Court found that Defendants had cured any violation of the RFDCPA, that an intrusion upon seclusion claim premised solely on the volume of calls is insufficient to demonstrate conduct that would be highly offensive to a reasonable person, and that Plaintiff had failed to establish any duty on the part of Defendants as is necessary for a negligent infliction of emotional distress claim. After the

Court's order, only the TCPA claim remained in this lawsuit.

Since then, the Court held a pretrial conference on April 8, 2016, at which it set this matter for trial to begin on June 13, 2016, on the TCPA claim. Plaintiff also filed a pre-trial memorandum of facts and law, and the Court entered a pre-trial order prepared by the parties. Neither of these documents make any mention of any actual damages suffered by Plaintiff. On May 26, 2016, Defendants filed the instant motion to dismiss, which they state was prompted, at least in part, by the Supreme Court's May 16, 2016 decision in *Spokeo v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff filed an opposition brief on May 31, 2016, and the Court held oral argument on June 2, 2016. Due to the condensed briefing schedule and specific issues raised by the Court at oral argument that were not addressed in the briefs, the Court vacated the pending trial date and gave the parties an opportunity for supplemental briefing on the motion. After considering those briefs, the Court determined that further oral argument was unnecessary and took the motion under submission.

## II. Requirements for Article III Standing

 The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). This case primarily concerns the first element.

 The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547–48 (quoting *Raines*, 521 U.S. at 820, n. 3, 117 S.Ct. 2312). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). "'For an injury to be "particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, n. 1, 112 S.Ct. 2130). Meanwhile, "[a] 'concrete' injury must be *'de facto'*; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

 "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the

plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (internal citations omitted). Here, although Defendants characterized their motion as a motion to dismiss, this case is beyond the summary judgment stage, and both parties submitted evidence with their briefs. Accordingly, "the plaintiff can no longer rest on [ ] 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the [ ] motion will be taken as true." *Id.*

### III. Discussion

 The Supreme Court has held that "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). In other words, "standing is not dispensed in gross." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Here, Plaintiff contends that Defendants violated the TCPA over 290 times, once for every time Defendants allegedly called her cell phone using an ATDS after Plaintiff had revoked her consent to call her cell phone. The private right of action section of the TCPA provides for a separate statutory $500 damage award for each call that violates

its provisions.[1] 47 U.S.C. § 227(b)(3). Each alleged violation is a separate claim, meaning that Plaintiff must establish standing for each violation, which in turn means that Plaintiff must establish an injury in fact caused by each individual call. In other words, for each call Plaintiff must establish an injury in fact as if that was the only TCPA violation alleged in the complaint. The determination of standing to bring a TCPA claim based on a call made using an ATDS does not change whether it is the only call alleged to have violated the TCPA or 1 of 290 calls that allegedly violated the TCPA. Accordingly, the Court must determine whether Plaintiff has evidence of an injury in fact specific to each individual call, and not in the aggregate based on the total quantity of calls. Plaintiff does not satisfy this burden.

First, Plaintiff argues that she suffered the exact harm that Congress wanted to eliminate with the TCPA, which Plaintiff argues consists of "unwanted calls to Plaintiff's cell phone and violation of privacy." This argument relates to the "particular" component, not the "concrete" component, of an injury in fact and ignores *Spokeo*'s holding that a statutory violation alone does not eliminate the requirement that a plaintiff establish a concrete injury caused by that statutory violation. *Spokeo*, 136 S.Ct. at 1549. That Defendants called Plaintiff's cell phone may satisfy the "par-

1. Defendants argue that Plaintiff lacks Article III standing because she suffered no monetary damage and the TCPA does not allow recovery for non-monetary or intangible injury. This argument conflates the question of whether Plaintiff has statutory standing to pursue a claim for a TCPA violation with the question whether she has Article III standing to pursue such a claim in federal court. "Unlike Article III standing, statutory standing is not jurisdictional." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir.2015). Statutory standing concerns, among other things, whether the law invoked was intended to create a private right of action for the plaintiff.

*See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 1386–88, 188 L.Ed.2d 392 (2014). A plaintiff could have suffered an injury in fact and have Article III standing, but not have statutory standing. Here, whether Plaintiff suffered a concrete injury as required for Article III standing does not necessarily mean that such injury qualifies Plaintiff to bring a TCPA claim. The concrete injury needed for Article III standing need not be monetary, so even assuming that Defendants' contention about a monetary damage requirement in the TCPA were correct, that fact is not relevant to the Article III standing analysis.

ticular" component, but it does not automatically satisfy the requirement that the injury be "concrete." Although a defendant violates the TCPA by dialing a cell phone with an ATDS, it is possible that the recipient's phone was not turned on or did not ring, that the recipient did not hear the phone ring, or the recipient for whatever reason was unaware that the call occurred. Indeed, some or all of these circumstances occurred here as the number of calls for which Plaintiff seeks damages at trial exceeds the number of calls alleged in the complaint, and in any event only two of the alleged TCPA violations involved calls that Plaintiff answered. A plaintiff cannot have suffered an injury in fact as a result of a phone call she did know was made. Moreover, even for the calls Plaintiff heard ring or actually answered, Plaintiff does not offer any evidence of a concrete injury caused by the use of an ATDS, as opposed to a manually dialed call. Accordingly, Plaintiff has not and cannot demonstrate that any one of Defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm.

■ Plaintiff also argues that Plaintiff suffered "additional" injuries in fact sufficient for standing including "invasion of privacy," "trespass to chattels," and "lost time, aggravation, and distress." Invasion of privacy and trespass to chattels are torts, not injuries in and of themselves. Injury is merely an element of these claims.[2] Moreover, with respect to a claim of trespass to chattels, the injury or damage must be with respect to the plaintiff's interest in the personal property, not to the plaintiff herself. *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1364, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003) ("[T]respass to chattels is not actionable if it does not involve actual or threatened injury to the personal property or to the possessor's legally protected interest in the personal property."). Here, Plaintiff does not allege or offer any evidence that Defendants' calls caused any damage to, or interfered with her interest in, her cell phone. *Cf. id.* at 1347, 1 Cal. Rptr.3d 32, 71 P.3d 296 ("[U]nder California law the tort [of trespass to chattels] does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.").

Only the last injury, "lost time, aggravation, and distress," could possibly be an "injury in fact" for the purpose of standing. However, Plaintiff's failure to connect any of these claimed injuries in fact with any (or each) specific TCPA violation is alone fatal to Plaintiff's standing argument. Nevertheless, the Court evaluates Plaintiff's claims of injury in fact with more specificity by dividing the calls into the following categories: (1) calls of which Plaintiff was not aware either because her

---

2. *See generally Rowland v. JPMorgan Chase Bank, N.A.*, No C 14–00036 LB, 2014 WL 992005, at *11 (N.D.Cal. Mar. 12, 2014) (noting that the third element of an intrusion upon seclusion claim is "the intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1350–51, 1 Cal.Rptr.3d 32, 71 P.3d 296 (2003) ("Under California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately caused injury*. In cases of interference with possession of personal property not amounting to conversion, the owner has a cause of action for trespass or case, and *may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use*.") (internal quotation marks and citation omitted; *italics* in original).

phone did not ring or she did not hear it ring; (2) calls that Plaintiff heard ring on her phone but that she did not answer; and (3) calls that Plaintiff answered and spoke with a representative of Defendants.

## A. Calls That Plaintiff Did Not Hear Ring On Her Cell Phone

The complaint alleges that Defendants called Plaintiff's cell phone using an ATDS 276 times in violation of the TCPA. Through discovery, however, it appears that Plaintiff learned that Defendants had actually placed over 290 calls to her cell phone using an ATDS. The record is unclear as to how many of these 290 calls Plaintiff was aware of when they were made. To the extent Plaintiff was unaware of any of Defendants' calls either because her ringer or phone were turned off, or because she did not have her phone with her when the calls occurred, none of her alleged injuries in fact are plausible or could be traceable to the alleged TCPA violation. That Defendants' placed a call to Plaintiff's cell phone using an ATDS is merely a procedural violation. For Plaintiff to have suffered "lost time, aggravation, and distress," she must, at the very least, have been aware of the call when it occurred. Accordingly, because Plaintiff has not, and likely could not, present evidence of an injury in fact as a result of calls placed by Defendants to Plaintiff's cell phone of which Plaintiff was not aware, Plaintiff lacks standing to assert a claim for a TCPA violation based on any of these calls.

## B. Calls That Plaintiff Heard Ring But Did Not Answer

Plaintiff asserts that for many of Defendants' calls, she heard the phone ring but did not answer the call. For at least some of these calls, Plaintiff asserts that she called the number that appeared on her phone and when someone answered on behalf of Defendants, she hung up. For each of these calls, to establish a TCPA violation, Plaintiff must demonstrate that she suffered an injury in fact solely as a result of the telephone ringing for that particular call. Plaintiff has not, and cannot, do so. No reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress, or any injury sufficient to establish standing. When someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally. Viewing each call in isolation, whether the phone rings as a result of a call from a family member, a call from an employer, a manually dialed call from a creditor, or an ATDS dialed call from a creditor, any "lost time, aggravation, and distress," are the same. Thus, Defendants' TCPA violation (namely, use of an ATDS to call Plaintiff) could not have caused Plaintiff a concrete injury with respect to any (and each) of the calls that she did not answer. Accordingly, Plaintiff lacks Article III standing for her TCPA claims based on calls she heard ring but did not answer.

## C. Calls Plaintiff Answered

Just two of Plaintiff's TCPA claims are based on calls she answered. As for these two calls, Plaintiff once again does not, and cannot, connect her claimed "lost time, aggravation, and distress" with Defendants' use of an ATDS to have called her. Put differently, Plaintiff does not offer any evidence demonstrating that Defendants' use of an ATDS to dial her number caused her greater lost time, aggravation, and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA, and lacks standing to make a claim for any violation attributable to the calls she actually answered.

## D. Plaintiff's Arguments

Plaintiff argues throughout her papers that she has suffered the exact injuries that the TCPA was intended to correct. Plaintiff relies heavily on language from *Spokeo* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). Thus, Plaintiff cites to various Congressional findings that the proliferation of telemarketing calls are a nuisance and invade the privacy of consumers. [Doc. No. 79 at 10-11] (citing Pub L. 102-243, § 2, 105 Stat. 2394 (Dec. 20, 1991)). The Court is not persuaded.

The findings Plaintiff cites as demonstrating Congress's intent in passing the TCPA reveal only that the TCPA was meant to protect societal or public harm caused by the increasing number of unwanted telemarketing calls to consumers that the use of an ATDS allowed telemarketers to make.[3] The harm identified by Congress was based on the quantity of calls consumers were receiving from telemarketers, not based on the use of ATDS.[4] The use of an ATDS may enable telemarketers to make more phone calls, but it is the calls themselves that result in the public harm that caused Congress to enact the TCPA. Thus, as a method of protecting the public from the harm caused by the proliferation of telemarketing calls, the TCPA restricted the use of an ATDS.

It does not follow, however, that an individual who receives one call to her cell phone using an ATDS suffers a concrete harm. Congress did not claim that the receipt of one solitary telephone call that was made using an ATDS, viewed in isolation and without regard to the identity of the caller or reason for the call, causes harm. Yet, that is how the TCPA defined a private right of action for a violation of the TCPA. Instead of basing a violation based on the quantity of calls, or creating a private right of action for someone who has received an excessive number of calls over time from the same offender, the TCPA treats every single call as a separate, independent violation, regardless of who made the call, the time of the call, the reason for the call, or whether the recipient was even aware the call was made or aware that it was made with an ATDS. This distinction is key. Congress's finding that the proliferation of unwanted calls from telemarketers causes harm does not mean that the receipt of one telephone call that was dialed using an ATDS results in concrete harm. In other words, regardless of Congress's reasons for enacting the TCPA, one singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.

---

**3.** The nuisance noted by Congress as a result of the proliferation of telemarketing calls is analogous a "harm borne by the public at large," that Justice Thomas referenced in his concurrence in *Spokeo*, 136 S.Ct. at 1551. Justice Thomas went on to explain that a "plaintiff seeking to vindicate a public right embodied in a federal statute, however, must demonstrate that the violation of that public right has caused him a concrete, individual harm distinct from the general population." *Id.* at 1553. Here, Plaintiff does not identify

any harm caused by the fact that the calls were made using an ATDS that is distinct from any harm the general population suffers as a result of the proliferation of calls to cell phones using an ATDS.

**4.** The findings noted that "over 30,000 businesses actively telemarket goods and services," and that "than 300,000 solicitors call more than 18,000,000 Americans every day." PL 102–243, 105 Stat 2394.

The Court is therefore unpersuaded by the reasoning of the various other district court decisions since *Spokeo* that have found that the plaintiffs had suffered a concrete injury and therefore had standing under the TCPA. Most of these cases consider the calls received by the plaintiff as a whole instead evaluating standing separately for each call alleged to violate the TCPA. *See, e.g., Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16–066–DCR, 2016 WL 3820195 (E.D.Ky. Jul. 11, 2016); *Mey v. Got Warranty, Inc.*, 193 F.Supp. 3d 641, No. 5:15–CV–101, 2016 WL 3645195 (N.D.W.V. Jun. 30, 2016); *Booth v. Appstack, Inc.*, No. C13–1533JLR, 2016 WL 3030256, at *5 (W.D.Wash. May 25, 2016). Meanwhile, in another case, the court appeared to hold that a plaintiff who receives a call on his cell phone that violates the TCPA has suffered a concrete injury simply because the call violated the TCPA. *See Rogers v. Capital One Bank (USA), N.A.*, 190 F.Supp.3d 1144, No. 1:15–CV–4016–TWT, 2016 WL 3162592, at *2 (N.D.Ga. Jun. 6, 2016). This reasoning is circular. Under *Spokeo*, if the defendant's actions would not have caused a concrete, or *de facto*, injury in the absence of a statute, the existence of the statute does not automatically give a Plaintiff standing. *See Spokeo*, 136 S.Ct. at 1547–48 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n. 3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). As discussed above, the mere dialing of a cellular telephone number using an ATDS, even if the call is not heard or answered by the recipient, does not cause an injury to the recipient. That the TCPA allows private suits for such calls does not somehow elevate this non-injury into a concrete injury sufficient to create Article III standing.

▮ Moreover, the specific facts of this case reveal that any harm suffered by Plaintiff is unconnected to the alleged TCPA violations. Defendants here were creditors of Plaintiff and were attempting to collect a debt. They were calling Plaintiff's cell phone because that was the only telephone number she provided them. Although these calls seeking to collect debts may have been stressful, aggravating, and occupied Plaintiff's time, that injury is completely unrelated to Defendants' use of an ATDS to dial her number. Plaintiff would have been no better off had Defendants dialed her telephone number manually. "A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir.1998). Further, that the use of an ATDS may have allowed Defendants to call a greater number of debtors more efficiently did not cause any harm to Plaintiff. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174–75 (7th Cir.2015) ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."). In other words, to use the language from *Spokeo*, Plaintiff's alleged concrete harm was divorced from the alleged violation of the TCPA. *See Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the injury-in-fact requirement of Article III.

### IV. Conclusion

For the foregoing reasons, Plaintiff lacks standing under Article III for her TCPA claims. Accordingly, Defendants' motion is **GRANTED**, and Plaintiff's TCPA claims are **DISMISSED**. Because all of Plaintiff's other claims were dis-

missed in a previous order, the pending motions in limine [Doc. Nos. 71, 72] are **DENIED** as **MOOT**, and this case is **CLOSED**.

It is **SO ORDERED**.